COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-364-CR

 

 

JULIE ANN JORDAN                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Appellant Julie Ann Jordan
appeals her conviction for driving while intoxicated.  After the trial court denied Appellant=s motions to suppress, she waived her right to a jury trial and
entered a plea of nolo contendere.  The
trial court found Appellant guilty, assessed her punishment at a fine of $750
and 180 days in the county jail, and suspended imposition of the sentence by
placing her on community supervision for a period of twenty-four months.  In two points, Appellant asserts that the
trial court erred by failing to suppress physical and testimonial evidence
obtained at the scene of her warrantless arrest.  We affirm.

MOTION TO SUPPRESS

In her first point, Appellant
argues that she was subject to an unreasonable search because she was required
to perform field sobriety tests.  She
contends that the Fourth Amendment applies to searches for signs of intoxication
through the use of field sobriety tests. 
In her second point, she asserts that her statements were used against
her in violation of Miranda because she was subjected to a custodial
interrogation.

1.  Evidence Presented








Officer Donald Meredith of
the Euless Police Department testified that he received a radio call, and the
dispatcher advised him that a concerned citizen was following a car down Main
Street that was weaving in and out of traffic lanes down the street.  According to the citizen, the car turned into
a westbound lane traveling eastbound. 
When Officer Meredith located the vehicle, he observed it blocking a
moving lane, which is a violation of the penal code.[2]  He pulled his patrol car directly in front of
the car.  Officer Meredith testified that
he blocked the car to protect the public in case the car began to move in the
event that the driver, later identified as Appellant, had left her foot on the
brake pedal and had left the car in gear. 
As he drove up, he observed Appellant=s head slightly slumped over as if she had possibly passed out behind
the wheel.  Backup officers arrived at
the scene and parked behind Appellant=s car.








As he approached the driver=s side of the vehicle, Officer Meredith saw Appellant in the car.  Based on his training and experience and the
information he had received from the dispatcher, Officer Meredith believed that
Appellant could have been intoxicated. 
When he asked Appellant where she was going, she seemed to be
confused.  In response to the officer=s questions, Appellant stated that she had come from a Mexican
restaurant in Grapevine and that she had drunk a couple of margaritas.  Officer Meredith asked Appellant to perform
some field sobriety tests, which she did, but she failed.  The officer arrested Appellant after she
failed the sobriety tests.  The officers
never read Appellant her Miranda[3]
rights at the scene.

Appellant testified that when
the officers began questioning her regarding how much she had to drink that
evening, she did not feel like she was free to leave.  She testified that she believed that if she
did not perform the field sobriety tests, she would be taken to jail.

2.  Standard Of Review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).  Therefore, we give
almost total deference to the trial court=s rulings on (1) questions of historical fact and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort Worth 2004, pet. ref=d).  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.

When reviewing a trial court=s ruling on a mixed question of law and fact, the court of appeals may
review de novo the trial court=s application of the law of search and seizure to the facts of the
case.  Estrada, 154 S.W.3d at
607.  When there are no explicit findings
of historical fact, the evidence must be viewed in the light most favorable to
the trial court=s
ruling.  Id.

We must uphold the trial
court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.  Armendariz v. State,
123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974
(2004); Ross, 32 S.W.3d at 856; Romero, 800 S.W.2d at 543.  

3.  Physical Evidence 








Appellant argues that the
Fourth Amendment and article one, section nine of the Texas Constitution apply
to searches for signs of intoxication through the use of field sobriety
tests.  Although she mostly complains in
her first point of a violation of her rights as guaranteed by the Fourth
Amendment, she also briefly argues that field sobriety tests are testimonial in
nature and require the administration of Miranda warnings in order to
protect her privilege against self-incrimination under the Fifth Amendment.

The Fifth Amendment applies
only to incriminating evidence that is testimonial in nature.  Williams v. State, 116 S.W.3d 788, 791
(Tex. Crim. App. 2003).  In order to be
testimonial, the communication must itself, explicitly or implicitly, relate a
factual assertion or disclose information. 
Id.  The court of criminal
appeals has held that sobriety tests yield physical evidence of a suspect=s mental and physical faculties, and thus, the results are not
testimonial evidence that implicates Miranda.  Gassaway v. State, 957 S.W.2d 48, 51
(Tex. Crim. App. 1997) (holding that field sobriety tests do not violate the
privilege against self-incrimination). 
Specifically, the court of criminal appeals has reasoned that field
sobriety tests are not testimonial because their results do not create Aan express or implied assertion of fact or belief.@  Id.








Appellant also claims that
the trial court erred in failing to suppress testimony concerning the field
sobriety tests pursuant to code of criminal procedure article 38.22.  See Tex.
Code Crim. Proc. Ann. art. 38.22 (Vernon Supp. 2005).  However, no Texas law requires that a suspect
be warned, or that consent be obtained, before the administration of a field
sobriety test.  Oguntope v. State,
177 S.W.3d 435, 438 (Tex. App.CHouston [1st  Dist.] 2005, no
pet.) (stating that while transportation code sections 724.012, 724.013, and
724.015 require statutory warnings of consequences of consent or failure to
consent to a breathalyzer test, no statute requires warnings prior to the
administration of field sobriety tests); Martin v. State, 97 S.W.3d 718,
720 (Tex. App.CWaco 2003,
pet. ref=d) (holding that a field sobriety test was not illegally obtained
because, unlike the statutory mandate that a breathalyzer test may not be
administered if the subject refuses to submit to the taking of the specimen, no
such statute applies to field sobriety tests).








Appellant=s Fourth Amendment complaint relates to the right to be secure  in her person from unreasonable searches or
seizures.  She asserts that she was
subjected to an unreasonable search and seizure when the officers asked her to
perform the field sobriety tests.  Both
the Fourth Amendment and article one, section nine of the Texas Constitution
guarantee individuals the right to be free from unreasonable searches and
seizures.  See U.S. Const. amend. IV; Tex. Const. art. I, ' 9.  The Fourth Amendment does
not forbid all searches and seizures, but only unreasonable searches and
seizures.  Davis v. State, 947
S.W.2d 240, 242 (Tex. Crim. App. 1997). 
Law enforcement officers may stop and briefly detain persons suspected
of criminal activity on less information than is constitutionally required for
probable cause to arrest.  Terry v.
Ohio, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); Davis, 947 S.W.2d
at 244.  To justify the intrusion, the
officer must have specific, articulable facts which, in light of his experience
and personal knowledge, together with inferences from those facts, would
reasonably warrant the intrusion on the freedom of the citizen detained for
further investigation.  Garza v. State,
771 S.W.2d 549, 558 (Tex. Crim. App. 1989). 
A police officer may briefly stop a suspicious individual in order to
determine his identity or to maintain the status quo momentarily while
obtaining more information.  Hoag v.
State, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987).  The officer must have a reasonable suspicion
that some activity out of the ordinary is occurring or has occurred, some
suggestion to connect the detained person with the unusual activity, and some
indication that the activity is related to a crime.  Id.








The scope of the detention
must be carefully tailored to its underlying justification.  Florida v. Royer, 460 U.S. 491, 500,
103 S. Ct. 1319, 1325-26 (1983).  The
scope of the intrusion permitted will vary to some extent with the particular
facts and circumstances of each case.  Id.  The scope of the detention must be temporary
and last no longer than necessary to effectuate the purposes of the stop.  Id. 
Furthermore, the investigative methods employed should be the least intrusive
means reasonably available to verify or dispel the officer=s suspicions within a short period of time.  Id. 

Here, Officer Meredith
received information that a car was weaving in and out of traffic and driving
eastbound down a westbound street.  He
personally observed Appellant, whose head was slumped over the steering wheel,
blocking a lane of traffic.  These
articulable facts, combined with Appellant=s admission that she had been drinking, were sufficient to give
Officer Meredith a reasonable suspicion to detain Appellant further to
administer field sobriety tests.  See
id.  The administration of the field
sobriety tests was the least intrusive means by which Officer Meredith could
verify or dispel his suspicion that Appellant had been driving while
intoxicated.  See id.  This minimal intrusion into Appellant=s personal freedom was reasonable under the circumstances.  See id.  Accordingly, we hold that Appellant=s Fourth Amendment rights and her rights under article one, section
nine, of the Texas Constitution were not violated by Officer Meredith=s temporary detention of Appellant and his request that she perform
field sobriety tests.  We overrule
Appellant=s first
point. 

4.  Testimonial Evidence 








In her second point,
Appellant contends that the trial court erred in denying her motion to suppress
the testimonial evidence that she alleges was obtained in violation of Miranda
because she was subjected to a custodial interrogation.  Appellant argues that when the officers asked
her where she had been and whether she had been drinking, she was in custody;
thus, her statements should be suppressed because the officers had not given
her Miranda warnings.  Citing Dowthitt
v. State, 931 S.W.2d 244 (Tex. Crim. App. 1996), and Jordy v. State,
969 S.W.2d 528 (Tex. App.CFort Worth,
no pet.), Appellant argues that she was in custody because the officers had
probable cause to arrest her prior to the questioning and because a reasonable
person in her position would have believed that she was under arrest or was not
free to leave; thus, the statements she made to the officers should have been
suppressed.

The need for Miranda
warnings arises when a person has been subjected to a custodial
interrogation.  Miranda, 384 U.S.
at 444, 86 S. Ct. at 1612. Article 38.22 of the Texas Code of Criminal
Procedure generally precludes the use of statements that result from custodial
interrogation absent compliance with its procedural safeguards.  Tex.
Code Crim. Proc. Ann. art. 38.22, ' 2.  If a statement is not the
result of a custodial interrogation, neither Miranda nor article 38.22
requires its suppression.  See Miranda,
384 U.S. at 444, 86 S. Ct. at 1612; Galloway v. State, 778 S.W.2d 110,
112 (Tex. App.CHouston
[14th Dist.] 1989, no pet.).








Custodial interrogation is
questioning initiated by law enforcement officers after a person has been taken
into custody or otherwise deprived of her freedom of action in any significant
way.  Miranda, 384 U.S. at 444, 86
S. Ct. at 1612.  A person held for an
investigative detention is not in custody. 
Dowthitt, 931 S.W.2d at 254. 
A person is in custody only if, under the circumstances, a reasonable
person would believe that his freedom of movement was restrained to the degree
associated with a formal arrest.  Id.  Persons temporarily detained pursuant to
traffic stops are not in custody for the purposes of Miranda.  Berkemer v. McCarty, 468 U.S. 420,
440, 104 S. Ct. 3138, 3150 (1984).  In Berkemer,
the Supreme Court determined that a motorist who was stopped for weaving on the
road, subjected to a modest number of questions by a patrolman, and who
performed a balancing test at a location visible to passing motorists, was not
taken into custody for purposes of Miranda.  Id. at 442, 104 S. Ct. at 3151.








The court of criminal appeals
adopted the Berkemer analysis in State v. Stevenson, 958
S.W.2d 824, 827 (Tex. Crim. App. 1997). 
In determining whether a noncustodial encounter has escalated into
custodial interrogation, the court of criminal appeals referred to four factors
discussed in Dowthitt, 931 S.W.2d at 254.  Stevenson, 958 S.W.2d at 826.  The factors for determining when a
noncustodial interrogation escalates into a custodial interrogation include the
following: (1) when the suspect is physically deprived of his freedom of action
in any significant way, (2) when law enforcement officers tell a suspect that
he cannot leave, (3) when law enforcement officers create a situation that
would lead a reasonable person to believe that his freedom of movement has been
significantly restricted, and (4) when there is probable cause to arrest and
law enforcement officers do not tell the suspect that he is free to leave.  Dowthitt, 931 S.W.2d at
255.  In the first, second, and third
situations, the restrictions upon freedom of movement must amount to the degree
associated with an arrest as opposed to an investigative detention.  Id. 
With regard to the fourth scenario, the officers= knowledge of probable cause must be manifested to the suspect.  Id. 

In holding that the appellant=s statements in Stevenson were admissible, the court of
criminal appeals held that the investigation was no more intrusive than in Berkemer,
and even if the appellant had become the focus of a DWI investigation, that
fact alone would not give rise to custody. 
Stevenson, 958 S.W.2d at 829. 
The court further noted that the existence of probable cause to arrest
did not distinguish the case from Berkemer, in which the officer
possessed probable cause to arrest after the suspect failed the sobriety
test.  Id.








Jordy held that the appellant was subjected to a custodial interrogation
following a traffic accident when, in response to the officer=s question regarding how much he had to drink, he stated, AA lot.@  969 S.W.2d at 531-32.  In Jordy, the appellant had lain down
on the ground and the officer had called an ambulance before asking the
appellant how much he had to drink.  Id.  In  Alford
v. State, this court reversed a DWI conviction because the appellant=s statement that he had consumed six beers was made in the absence of Miranda
warnings, but the appellant made this statement after he had been handcuffed
and placed on the ground.  22 S.W.3d 669,
672 (Tex. App.CFort Worth
2000, pet. ref=d).  Both of these cases present additional
circumstances  showing that the
questioning had occurred beyond the investigatory stage.  Lewis v. State, 72 S.W.3d 704, 713
(Tex. App.CFort Worth
2002, pet. ref=d). 








Here, Officer Meredith had
received information from a police dispatcher that a concerned citizen had seen
Appellant driving erratically and that she was possibly intoxicated.  He was informed that Appellant was weaving in
and out of traffic and traveling westbound in an eastbound lane of
traffic.  When Officer Meredith located
Appellant, her car was stopped in the middle of the road, blocking a lane of
traffic.  When he first saw Appellant,
she appeared to be slumped over, and he initially thought that she had possibly
passed out behind the wheel.  When
Officer Meredith spoke with Appellant, she seemed confused.  These circumstances were enough to vest the
trooper with reasonable suspicion to detain Appellant and further investigate
the possibility of her involvement in the criminal act of driving while
intoxicated.  Powell v. State, 5
S.W.3d 369, 377 (Tex. App.CTexarkana 1999, pet. ref=d) (holding that an officer may continue the detention after an
initial stop if he develops reasonable suspicion to believe that the detainee
was engaged in criminal activity); see State v. Brabson, 899 S.W.2d 741,
749 (Tex. App.CDallas
1995), aff'd, 976 S.W.2d 182 (Tex. Crim. App. 1998) (holding that
reasonable suspicion to detain arose when the suspect honked his horn
excessively and emitted a strong odor of alcohol).

We hold that Appellant=s statements were not the product of a custodial interrogation, but
were merely the result of an investigative detention.  Therefore, the statements are admissible even
in the absence of a Miranda warning and the warnings articulated in code
of criminal procedure section 38.22.  See
Stevenson, 958 S.W.2d at 829. 
Accordingly, we hold that the trial court did not err in denying
Appellant=s motion to
suppress.  We overrule Appellant=s second point.

 

 

 








CONCLUSION 

Having overruled Appellant=s two points, we affirm the trial court=s judgment.

 

PER
CURIAM

 

PANEL A:  HOLMAN, J.; CAYCE, C.J.; and WALKER, J.

 

DO NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 10, 2006











[1]See Tex. R. App. P. 47.4.





[2]A
person commits the offense of obstructing a highway or other passageway if she
intentionally, knowingly, or recklessly obstructs a Ahighway,
street, . . . entrance, or exit to which the public or a substantial group of
the public has access, or any other place used for the passage of persons,
vehicles, or conveyances, regardless of the means of creating the obstruction.@  Tex.
Penal Code Ann. '
42.03(a)(1) (Vernon 2003).





[3] See
Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).